UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-099-RJC-DCK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ERIC DEWAYNE LEAK | ) | |
| | ) | |

On November 14, 2019, this Court rejected Defendant's plea to "a charge involving promotional money laundering," (Text-Only Order, Nov. 14, 2019), finding an insufficient factual basis to support the charge. This Order sets forth the grounds for that determination. Put simply, the Government has failed to allege a federal crime. The payment of proceeds from specified unlawful activity, "*to wit* paying kickbacks under a federal health care program in violation of 42 U.S.C. § 1320(a)-7b(b)(2)(A)," to promote the carrying on of separate specified unlawful activity, "*to wit* bribery in violation of various state laws, including North Carolina General Statute § 78C-98," (Doc. No. 1, ¶ 14), does not violate the promotional money laundering statute.

## I.    BACKGROUND

From early 2012 through the end of 2014, Defendant Eric Dewayne Leak ("Defendant" or "Leak") owned and operated Nature's Reflections, LLC, a mental health company that was enrolled as a Medicaid provider. (Doc. No. 1, ¶ 2.) During this period, Leak was involved in the payment of illegal kickbacks in the amount of $420,115 to induce referrals for items or services covered by Medicaid. (Doc. No. 1,

¶ 4; Doc. No. 3, ¶ 1.) Nature's Reflections received millions of dollars in direct reimbursements from Medicaid as part of that fraud. (Doc. No. 1, ¶ 2.) Leak pleaded guilty in the United States District Court for the Middle District of North Carolina to one count of paying kickbacks under a federal health care program in violation of 42 U.S.C. § 1320(a)-7b(b)(2)(A) (the "MDNC charge") and one count of money laundering in violation of 18 U.S.C. § 1957(a). (Doc. No. 3, ¶ 1.) He was sentenced to an 18-month prison sentence for those offenses, which he is currently serving.

After Leak pleaded guilty to the MDNC charge, and after the United States Attorney's Office for the MDNC rejected the instant offense for prosecution, the Government initiated this case in the Western District of North Carolina. (Doc. No. 22, at 3.) The Government charged Leak with one count of conspiracy to commit promotional money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (the "PML statute") and 1956(h) (the "WDNC charge"). (Doc. No. 1, ¶ 13.)

The WDNC charge at issue here is based on Leak's ownership and operation of Hot Shots Sports Management, LLC, which Leak formed in December 2012. (Doc. No. 1, ¶ 3.) Hot Shots' business included "transitioning" student athletes from collegiate athletics to the National Football League and National Basketball Association. (Doc. No. 3, ¶ 2.) "Transitioning" is a euphemism for paying athletes under the table in hopes they would use Leak's company as their agent. Some of the payments, stipulated to in the Factual Basis to be between $50,000 and $75,000, represented proceeds derived from Nature's Reflections' kickback scheme. (Doc. No. 3, ¶ 8.) The Bill of Information alleges that Leak intended to promote the carrying

on of specified unlawful activity—namely, bribery of college athletes. (Doc. No. 1, ¶ 14.)

Leak and the Government entered into a Plea Agreement pursuant to which Leak agreed to plead guilty to conspiracy to commit promotional money laundering. (Doc. No. 2.) The Plea Agreement stipulates that the parties will recommend a base offense level of 20 under USSG § 2S1.1(a)(1) ["[t]he offense level for the underlying offense from which the laundered funds were derived"].[1] Following a plea hearing on April 11, 2019, the Magistrate Judge recommended that this Court accept Leak's guilty plea and enter judgment thereon. (Doc. No. 9.)

Prior to sentencing, this Court expressed concern that the plea lacked a factual basis, including whether using the proceeds of generating specified unlawful activity to promote the carrying on of separate, non-generating specified unlawful activity could violate the PML statute. The Court continued sentencing pending supplemental briefing on this and other issues. As stated earlier, following the submission of the parties' supplemental briefs, the Court entered an order rejecting the plea.

## II.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 11(b)(3) states that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for

---

[1] The Factual Basis, (Doc No. 3, ¶ 1), and the subsequent PSR, (Doc. No. 16, paragraph 20), make clear that the loss comes from the $420,115 in kickbacks from the MDNC case, and not the stipulated amount of proceeds actually used in the WDNC offense.

the plea." Fed. R. Crim. P. 11(b)(3). This rule "ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010). "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" United States v. Mastrapa, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)). "[T]he trial court has wide discretion when determining whether a factual basis exists." United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991). The district court must, however, be satisfied "that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." United States v. Carr, 271 F.3d 172, 178 n.6 (4th Cir. 2001).

## III. DISCUSSION

The PML statute provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity" [commits a crime].

18 U.S.C. § 1956(a)(1)(A)(i). The statute sets forth over 250 offenses that constitute "specified unlawful activity." Id. § 1956(c)(7); United States v. Santos, 553 U.S. 507, 516 (2008). This case raises the issue of whether a person violates the PML statute by conducting a transaction that involves the proceeds of generating specified

4

unlawful activity with the intent to promote the carrying on of different, non-generating specified unlawful activity. In other words, can "specified unlawful activity" mean two different predicate offenses for purposes of a single conviction?

### A. Existing Case Law

In its supplemental brief, the Government states that it "was unable to locate any cases finding that a violation of [the PML statute] was limited to instances where a defendant had promoted ongoing or past specified unlawful activity." (Doc. No. 22, at 7.) The Government asserts further that (1) Section 2187 of the DOJ Criminal Resource Manual contemplates prosecutions of promotional money laundering based on transactions where the promotion element involves specified unlawful activity that is different from the specified unlawful activity that generated the laundered proceeds, and (2) courts have affirmed promotional money laundering convictions where the promoted specified unlawful activity was different from the generating specified unlawful activity. (Doc. No. 22, at 7.)

The DOJ Criminal Resource Manual's interpretation of the PML statute is not entitled to deference. Crandon v. United States, 494 U.S. 152, 177 (1990) (Scalia, J., concurring) ("The law in question, a criminal statute, is not administered by any agency but by the courts. . . . The Justice Department, of course, has a very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference."). Moreover, any authority it may have is diminished by the testimony before Congress of William F. Weld,

Assistant Attorney General for the Criminal Division, that the PML statute criminalizes "dealings with the proceeds of a wide range of specified unlawful activities when those dealings are aimed at furthering <u>the same</u> specified unlawful activities." The Money Laundering Control Act of 1986 and the Regulations Implementing the Bank Secrecy Act: Hearings Before the Subcomm. on Fin. Insts. Supervision, Regulation & Ins. of the Comm. on Banking, Fin. & Urban Affairs, 100th Cong. 91 (1987) (statement of William F. Weld, Assistant Attorney General, Criminal Division, Department of Justice) (emphasis added).

The cases cited by the Government likewise do not resolve the issue before the Court. A few of the cases are unpublished adoptions of R&R's. None specifically address the issue of whether a promotional money laundering conviction may be based on a transaction involving proceeds of generating specified unlawful activity that is intended to promote the carrying on of different, non-generating specified unlawful activity. (Doc. No. 22, at 7–8.) None are from the Fourth Circuit. In short, the cases are not particularly helpful— at best, they indicate that the Government has charged promotional money laundering predicated on the intent to promote non-generating specified unlawful activity in contravention of prior departmental congressional testimony and no one complained.

Contrary to the Government's contention, cases that have addressed the specific issue before the Court support the conclusion that promotional money laundering does not occur when the activity intended to be promoted is non-generating specified unlawful activity. In <u>United States v. Smith</u>, the government

argued that proceeds from one specified unlawful activity (social security disability fraud) could be used to promote different specified unlawful activity (illegal moonshine operation). 623 F. Supp. 2d 693, 712 (W.D. Va. 2009). The Court rejected that argument, concluding that "criminalizing use of money from one illegal source to 'promote'… a distinct illegal enterprise does not comport with the purpose of the money laundering statute." Id. The Court further stated that "[t]hough a number of statutorily defined predicate crimes may constitute 'specified unlawful activity' that term must be used singularly and consistently for each money laundering conviction." Id.

In addition, several federal appellate courts, including the Fourth Circuit, have described the PML statute as criminalizing transactions involving proceeds of specified unlawful activity with the intent to promote the carrying on of <u>that</u> specified unlawful activity—that is, the generating specified unlawful activity from which the laundered proceeds were derived. <u>United States v. Simmons</u>, 737 F.3d 319, 322 (4th Cir. 2013) ("The federal [PML statute] makes it a crime to engage in a 'financial transaction' involving 'the proceeds of specified unlawful activity' with the intent to 'promote the carrying on' of <u>that</u> activity." (emphasis added) (quoting 18 U.S.C. § 1956(a)(1)(A)(i))); <u>United States v. Singh</u>, 518 F.3d 236, 246 (4th Cir. 2008) (stating that the PML statute requires the Government to prove that "defendant intended to promote the carrying on of <u>the</u> specified unlawful activity" (emphasis added)); <u>United States v. Stoddard</u>, 892 F.3d 1203, 1214 (D.C. Cir. 2018) ("The promotion prong of [the PML statute] is aimed . . . only at transactions which funnel ill-gotten gains

7

directly back into the criminal venture." (quotation marks omitted) (omission in original)); United States v. Hosseini, 679 F.3d 544, 551 (7th Cir. 2012) (stating that the PML statute "requires the government to prove that the financial transaction in question was intended to promote the underlying unlawful activity"); United States v. Febus, 218 F.3d 784, 789–90 (7th Cir. 2000) (stating that the PML statute "punishes transactions that promote the continued prosperity of the underlying offense" and requires the Government to prove that defendant "conducted the transaction with the intent to promote the carrying on of the unlawful activity" (emphasis added)); United States v. Brown, 553 F.3d 768, 786 (5th Cir. 2008) ("The crime of money laundering promotion is aimed not at maintaining the legitimate aspects of a business nor at proscribing all expenditures of ill-gotten gains, but only at transactions which funnel ill-gotten gains directly back into the criminal venture."); United States v. Gotti, 459 F.3d 296, 334 (2d Cir. 2006) (stating that the PML statute requires the Government to prove that defendant conducted a transaction "with the intent to promote the carrying on of that unlawful activity" (emphasis added)); United States v. Huber, 404 F.3d 1047, 1061 (8th Cir. 2005) ("[The PML statute] is geared at the purpose of a transaction that involves funds unlawfully obtained – to promote (or facilitate) the specified unlawful activities that generate the funds being laundered." (emphasis in original)); United States v. McGahee, 257 F.3d 520, 526 (6th Cir. 2001) (stating that the PML statute requires the Government to prove that defendant "intended to promote that unlawful activity" (emphasis added)); United States v. Carcione, 272 F.3d 1297, 1302 (11th Cir. 2001) (stating that

8

the PML statute requires the Government to prove that "defendant conducted the financial transaction 'with the intent to promote the carrying on of [the] specified unlawful activity'" (alteration in original) (emphasis added) (quoting 18 U.S.C. § 1956(a)(1)(A)(i))).

## B.    Principles of Statutory Interpretation

Well established principles of statutory interpretation lead this Court to the same conclusion as stated in the above cases. In order to fall within the ambit of the PML statute, defendant must have conducted a transaction that involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity from which those proceeds were derived.

A court's objective in all cases of statutory interpretation is "to ascertain and implement the intent of Congress, and Congress's intent can most easily be seen in the text of the Acts it promulgates." Aziz v. Alcolac, Inc., 658 F.3d 388, 392 (4th Cir. 2011) (quotation marks omitted).   Thus, a court's inquiry begins with "the plain meaning of the statutory language." Schilling v. Schmidt Baking Co., 876 F.3d 596, 601 (4th Cir. 2017). "When a term goes undefined in a statute, [courts] give the term its ordinary meaning." Kouichi Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012).   Courts frequently turn to dictionaries for help in determining a term's ordinary meaning. Yates v. United States, 574 U.S. 528, 537 (2015); Johnson v. Zimmer, 686 F.3d 224, 232 (4th Cir. 2012). "In interpreting the plain language of the statute, [courts] also look to the specific context in which the language is used, and the broader context of the statute as a whole." Hurlburt v. Black, 925 F.3d 154, 158

(4th Cir. 2019) (quotation marks omitted).  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." United States v. Hager, 721 F.3d 167, 182 (4th Cir. 2013) (quotation marks omitted) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992)).  "On the other hand, if the text of a statute is ambiguous, [courts] look to other indicia of congressional intent such as the legislative history to interpret the statute."  Lee v. Norfolk S. Ry., 802 F.3d 626, 631 (4th Cir. 2015) (quotation marks omitted).  A statute is ambiguous if "it lends itself to more than one reasonable interpretation."  Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir. 2004).

### 1.    Plain Meaning

The text of the PML statute makes it unlawful to conduct or attempt to conduct a transaction that "involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity."  18 U.S.C. § 1956(a)(1)(A)(i).  Neither "promote" nor "carrying on" are defined in the statute and, thus, the Court gives these terms their ordinary meaning.  At the time of enactment, the ordinary meaning of "promote" was "to contribute to the growth, enlargement, or prosperity of: further, encourage" and "to bring or help to bring (as a business enterprise) into being: launch."  Webster's Third New International Dictionary (1986).  The ordinary meaning of "carry on" was "conduct, manage" and "to continue one's course of activity."  Id.  It would be implausible to interpret "to promote the

10

carrying on of specified unlawful activity" as "to launch the conducting or management of specified unlawful activity." Thus, the ordinary meaning of "carry on" suggests that in this context, "promote" means to further or encourage, rather than to launch. Applying the ordinary meaning of "promote" and "carry on," the plain language of the PML statute makes it unlawful to conduct a transaction that involves the proceeds of specified unlawful activity with the intent to further or encourage the conducting of specified unlawful activity. The plain meaning of the PML statute therefore presupposes specified unlawful activity that was ongoing at the time of the money laundering activity. To read it otherwise would read the phrase "the carrying on" out of the statute. Espinal-Andrades v. Holder, 777 F.3d 163, 168 (4th Cir. 2015) ("It is 'a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' Accordingly, [courts] must try to give every word in the statute meaning to avoid rendering its terms superfluous." (quoting Alaska Dep't of Envt'l Conservation v. E.P.A., 540 U.S. 461, 489 n.13 (2004))).

Read together, "promote" and "the carrying on" require continuation. It would be arbitrary to interpret the PML statute as prohibiting transactions intended to promote any specified unlawful activity that began prior to the money laundering activity—even specified unlawful activity that did not generate the laundered proceeds—but not as prohibiting transactions intended to promote newly instigated specified unlawful activity. The better contextual interpretation of the PML statute

11

is that it prohibits transactions involving proceeds of specified unlawful activity with the intent to promote the carrying on of generating specified unlawful activity from which the proceeds were derived. Read this way, the statute makes perfect sense—a rational Congress could have intended promotional money laundering to apply to transactions intended to promote the carrying on of generating specified unlawful activities but not to other specified unlawful activity (i.e., ongoing, non-generating specified unlawful activity or newly instigated specified unlawful activity).

### 2.    Legislative History

Even if the plain language of the PML statute was ambiguous, the statute's legislative history further supports that Congress intended for the PML statute to criminalize only those transactions intended to promote specified unlawful activity that generated the laundered proceeds.

The PML statute was enacted by the 99th Congress as part of an omnibus House bill. Anti-Drug Abuse Act of 1986, H.R. 5484, 99th Cong. § 1352 (1986). The version of the omnibus bill that first passed the House included a money laundering offense but did not include a promotional money laundering offense. H.R. 5484, 99th Cong. § 502 (as received in Senate, Sept. 15, 1986). The Senate amended the omnibus bill to add the promotional money laundering offense included in Senate Bill 2683. 132 Cong. Rec. S27162, 27203 (Sept. 30, 1986). Senate Bill 2683 had its origins in three earlier Senate bills, introduced in the 99th Congress but not passed, that form the history of Senate Bill 2683: the Money Laundering Crimes Act, S. 572, 99th Cong. (1985); the Money Laundering and Related Crimes Act of 1985, S. 1335, 99th Cong.

12

(1985); and the Money Laundering Crimes and Disclosure Act of 1985, S. 1385, 99th Cong. (1985). S. Rep. No. 99-433, at 4–5 (1986). The PML statute in all three of these earlier bills made it unlawful for a person to conduct a transaction through a financial institution engaged in interstate commerce with "intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of <u>any</u> [specified] unlawful activity."[2] S. 572, § 2(a); S. 1335, § 2(a); S. 1385, § 2(a) (emphasis added).

In addition to the prior Senate bills discussed above, three House money laundering bills were introduced in the 99th Congress but not passed: the Money Laundering Act of 1985, H.R. 1367, 99th Cong. (1985); the Drug Money Seizure Act, H.R. 1945, 99th Cong. (1985); and the Money Laundering and Related Crimes Act of 1985, H.R. 2786, 99th Cong. (1985). Like the prior Senate bills, the PML statute in all three of the earlier House bills made it unlawful for a person to conduct a transaction through a financial institution engaged in interstate commerce with "intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of <u>any</u> [specified] unlawful activity." H.R. 1367, § 101(a); H.R. 1945, § 202(a); H.R. 2786, § 2(a) (emphasis added).

Critically, however, the PML statute in Senate Bill 2683, which the Senate

---

[2] Like the enacted PML statute's definition of "specified unlawful activity," Senate Bills 572 and 1385 defined "unlawful activity" to mean several specific offenses. Senate Bill 1335 defined "unlawful activity" as any act occurring in or directed at the United States constituting an offense punishable by death or imprisonment for a term exceeding one year under the laws of the United States or any state in which the act took place.

added to the omnibus House bill, made it unlawful for a person to conduct a transaction that involves the proceeds of specified unlawful activity "with the intent to facilitate the carrying on of specified unlawful activity"—that is, the Senate deleted the indefinite article "any" before "specified unlawful activity." Money Laundering Crimes Act of 1986, S. 2683, 99th Cong. § 2(a) (1986); 132 Cong. Rec. S27203. Although "facilitate" was ultimately replaced with "promote," the absence of "any" preceding "specified unlawful activity" remained in all subsequent versions of the legislation and the enacted PML statute. Pub. L. No. 99-570, § 1352(a), 100 Stat. 3207-18 (1986).

The Supreme Court has stated that "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." INS v. Cardoza-Fonseca, 480 U.S. 421, 442 (1987). Thus, "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." Russello v. United States, 464 U.S. 16, 23–24 (1983); see also Helsinn Healthcare S.A. v. Reddy's Labs. Ltd., 387 F. Supp. 3d 439, 493 (D.N.J. 2016) (stating that this principle applies to any language included in an earlier version of a bill but deleted prior to enactment); United States Citizens Ass'n v. Sebelius, 754 F. Supp. 2d 903, 915 (N.D. Ohio 2010) (same); Thompson v. Kennickell, 797 F.2d 1015, 1023 (D.C. Cir. 1986) ("When faced with a congressional amendment deleting a provision from a bill under consideration, courts typically assume that Congress knows the content of its amendment and therefore

intends the deletion.").

Here, to interpret the PML statute as making it unlawful to conduct a transaction that involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity that did not generate the laundered proceeds would read back into the PML statute the very word "any" that Congress deleted from earlier versions of the statute prior to enactment. The Court will not assume that Congress intended for the PML statute to apply to transactions intended to promote the carrying on of different, non-generating specified unlawful activity when prior versions of the PML statute from both chambers of Congress contained unambiguous language to carry out that objective and Congress deleted such language prior to enactment. See Chickasaw Nation v. United States, 534 U.S. 84, 93 (2001) ("[T]o adopt [plaintiffs'] interpretation would read back into the Act the very word . . . that the Senate committee deleted. We ordinarily will not assume that Congress intended to enact statutory language that it has earlier discarded in favor of other language." (quotation marks omitted)); Benjamin v. Fraser, 343 F.3d 35, 46 (2d Cir. 2003) (concluding that Congress did not intend for the Prison Litigation Reform Act of 1995 ("PLRA") to prohibit the use of monitors where a predecessor bill to the PLRA, introduced but not passed, expressly prohibited the use of monitors and the enacted PLRA did not include an express prohibition); City of Jacksonville v. Dep't of the Navy, 348 F.3d 1307, 1312 (11th Cir. 2003) (concluding that Congress did not intend for the Clean Air Act to preclude removal of actions brought against the United States where an earlier version of the statute contained a provision barring

removal of suits against federal facilities and Congress deleted such provision prior to enactment); Microsoft Corp. v. Comm'r, 311 F.3d 1178, 1186 (9th Cir. 2002) (concluding that Congress intended for the Internal Revenue Code's definition of "export property" to include copyrighted computer software where Congress considered earlier bills that expressly restricted export property to copyrighted "motion pictures, television, radio, or background music, but ultimately chose language that left the nature of the copyrighted material more broadly defined").

The Court thus concludes that one does not violate the PML statute by conducting a transaction that involves the proceeds of generating specified unlawful activity with the intent to promote the carrying on of different, non-generating specified unlawful activity—defendant must have intended to promote specified unlawful activity from which the laundered proceeds were derived in order to fall within the ambit of the PML statute.

### 3. Rule of Lenity

Even assuming arguendo that the PML statute's language, structure, and legislative history failed to resolve any ambiguity, however, the rule of lenity would mandate the same interpretation. "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." Maracich v. Spears, 570 U.S. 48, 76 (2013) (alteration in original). The rule "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute." United States v. Bishop, 740 F.3d 927, 934 (4th Cir.

2014). When such ambiguity remains, the rule of lenity requires the court to adopt the construction most favorable to the defendant. Yi v. Fed. Bureau of Prisons, 412 F.3d 526, 535 (4th Cir. 2005). As the Supreme Court has explained:

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

Santos, 553 U.S. at 514. Interpreting the PML statute as prohibiting only those transactions intended to promote the carrying on of specified unlawful activity that generated the laundered proceeds is more favorable to the defendant than interpreting the statute as prohibiting transactions intended to promote the carrying on of generating or non-generating specified unlawful activity. Thus, even if the Court were to find that the PML statute's language, structure, and legislative history failed to resolve any ambiguity, the rule of lenity would require the Court to interpret the statute as applying only to transactions intended to promote the carrying on of generating specified unlawful activity.

## IV. CONCLUSION

In sum, one does not violate the PML statute by conducting a transaction that involves the proceeds of generating specified unlawful activity with the intent to promote the carrying on of different, non-generating specified unlawful activity. Here, the stipulated factual basis for Leak's guilty plea to conspiracy to commit promotional money laundering assesses that Leak conspired to conduct transactions that involved proceeds of specified unlawful activity that was the subject of the

MDNC case (paying kickbacks under a federal health care program in violation of 42 U.S.C. § 1320(a)-7b(b)(2)(A)) with the intent to promote the carrying on of different specified unlawful activity, charged here, that did not generate the laundered proceeds (bribery in violation of state laws). This factual basis is insufficient to support a conclusion that Leak conspired to commit promotional money laundering. The Court rejects Leak's guilty plea.

Signed: December 4, 2019

Robert J. Conrad, Jr.
United States District Judge